# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ASHTON CACHO,

    Petitioner,

vs.

ROBERT LEGRAND, et al.,

    Respondents.

Case No. 3:12-cv-00171-RCJ-WGC

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#4), respondents' answer (#22), and petitioner's traverse (#44). The court finds that relief is not warranted, and the court denies the petition.

    After a jury trial, petitioner was convicted in state district court of one count of open or gross lewdness, one count of indecent exposure, and four counts of lewdness with a child under the age of 14, known as C.M. Ex. 28 (#13). Petitioner appealed. The Nevada Supreme Court found that the convictions for open and gross lewdness and for indecent exposure were redundant, and it reversed the conviction for indecent exposure. Ex. 48 (#13).

    Petitioner then filed in state district court a post-conviction habeas corpus petition. Ex. 60 (#14). The state district court denied the petition. Ex. 70 (#14). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 71 (#14).

    Petitioner then commenced this action. The court served the petition upon respondents, who moved to dismiss some grounds (#11). The court dismissed grounds 2, 4, 6, 10, and part of ground 7 because they were procedurally defaulted. The court dismissed grounds 1 and 5 because they

were conclusory. Order (#18). Reasonable jurists would not find these determinations to be debatable or wrong, and the court will not issue a certificate of appealability for the dismissal of these grounds.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

In ground 3, petitioner claims that the prosecution withheld potential exculpatory or impeachment evidence from the defense. Petitioner raised this claim on direct appeal. The Nevada Supreme Court held:

> Cacho next argues that the State knowingly withheld exculpatory evidence until just days before the trial began. His argument focuses on Child Protective Service (CPS records. This argument is meritless.
>
> Brady v. Maryland, 373 U.S. 83 (1963) requires the state to disclose material evidence to the defense. Mazzan v. Warden, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000). "[E]vidence is material if there is a reasonable probability that the result would have been different if the evidence had been disclosed." Id. There are three factors to consider when examining a potential Brady violation: whether the evidence at issue (1) was favorable to the defendant; (2) was withheld, either inadvertently or intentionally; and (3) was material and, therefore, prejudice occurred. Id. at 67, 993 P.2d at 37. This court uses de novo review in determining whether the state has committed a Brady violation. Id. at 66, 993 P.2d at 36.
>
> The district court held a calendar call on February 6, 2008. During the proceeding, the following exchange took place between the court, the State, and the defense:
>
>> [DEFENSE COUNSEL]: . . . I had put in an order on this case with the Court. I'm assuming it's in your file. It's for the relief of CPS records from [the prosecutor]—
>>
>> THE COURT: No, I didn't find it. It came in yesterday, I didn't sign it.
>>
>> . . . .
>>
>> [THE PROSECUTOR]: I have no objection. In fact, I told him to file. I have the CPS records.
>
> The late disclosure of the CPS materials was due to Cacho's failure to request the records sooner. Indeed, from the exchange above, it appears that the State reminded the defense to ask for the CPS records. Further, at the conference call, Cacho did not object to the timing of the disclosure or move for a continuance. When the trial began on February 11, 2008, Cacho, again, did not move to continue or express ay concerns regarding the CPS evidence. Rather, he used the CPS records, which revealed that C.M. had made inconsistent statements regarding the sexual abuse, including denying and recanting the allegations, to impeach C.M. Cacho's cross-examination of C.M. and the other State witnesses was in part based on the CPS records. Therefore, Cacho has ailed to demonstrate how the late disclosure prejudiced him. Further, Cacho received the information at a later date because he did not ask for it until days before the trial. Accordingly, because Cacho has failed to demonstrate any intent by the State to withhold the evidence or any prejudice, we conclude that there was no Brady violation.

Ex. 48, at 8-9 (#13). The Nevada Supreme Court identified the correct principle of federal law, Brady. The Nevada Supreme Court also identified the correct method of establishing a Brady violation. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Given that the defense counsel used the CPS records for the purpose that he sought them, impeachment of C.M., the Nevada Supreme Court reasonably applied Brady. Ground 3 is without merit.

Reasonable jurists would not find this conclusion to be debatable or wrong, and this court will not issue a certificate of appealability on ground 3.

The remaining parts of ground 7 are three claims of the prosecutor vouching for witnesses during closing argument and one claim of the prosecutor misstating evidence during closing argument. On the issue of vouching, the Nevada Supreme Court held:

> Cacho contends that the State vouched for the credibility of its witnesses three times. First, when the prosecutor said, "The truth is he really showed it." We note that the context in which the State spoke was in describing the exposure incident, where Cacho admitted to accidentally showing C.M. his penis. The State was making a comment, not vouching for C.M.'s credibility.
>
> Next, Cacho assigns error to the State's comment, "That's truth . . . That's real," in describing the emotions Brada [the mother of C.M.] felt when she found out that Cacho had touched her daughter. The State was referring back to what Melissa [Brada's sister and C.M.'s aunt] testified to—listening to the exchange between Brada and C.M. over the phone. Melissa testified that it was then that Brada learned that Cacho had touched C.M. Melissa further testified that Brada was crying and very upset. In referring back to Melissa's description, the State was not vouching for Melissa's truthfulness; rather, the State was explaining that Brada's reaction was an authentic reaction to discovering that Cacho had touched her daughter.
>
> Lastly, Cacho assigns error to the State's comment, "[C.M.] has to this day never recanted her allegations, in spite of still being in foster care." The State was stating a fact—not vouching for C.M.'s credibility as a witness. C.M. had made so many inconsistent statements, the State was simply pointing out that since the allegations were reported to the police and she had been placed in foster care, C.M. had not changed her story. The State was pointing out relevant evidence and not engaging in impermissible vouching.

Ex. 48, at 15-16 (#13). In argument the prosecutor can comment on witnesses' credibility as long as it does not amount to personal vouching or denigration. See United States v. Berger, 295 U.S. 78, 88 (1935). The Nevada Supreme Court reasonably could have concluded that these comments, in context, were not vouching. The first comment referred to petitioner's own admission that he had shown C.M. his penis. See Ex. 21, at 124-25 (#13). The second comment, as noted by the Nevada Supreme Court, referred to the observed reaction of Brada, C.M.'s mother, when C.M. told

her about petitioner's molestation. The prosecutor had been explaining how this molestation was inconvenient for Brada, and afterwards, the prosecutor said, "[Brada] had every reason to say that Chloe's lying and that it didn't happen. And that's never happened." Ex. 21, at 136 (#13). In other words, the prosecutor was explaining why the jury could believe Brada's reaction, because it came at personal expense to her. The third comment, as the Nevada Supreme Court had held, simply was a commentary on the evidence and not any vouching.

On the claim that the prosecution had misstated evidence, the Nevada Supreme Court held:

> Cacho further asserts that it was prosecutorial misconduct when the State, in its closing argument, discussed the exposure incident and stated, "Even [Cacho] acknowledged that accidentally admittedly he showed her his penis." The State dis not misstate the evidence. Cacho admitted that he accidentally showed C.M. his penis. In fact, that admission was part of his transcribed statement to police, which was admitted as an exhibit at trial. Accordingly, the argument is meritless.

Ex. 48, at 14 n.3 (#13). Petitioner's statement in question is transcribed in the answering brief on direct appeal. Ex. 44, at 33 (#13). The Nevada Supreme Court reasonably could have concluded that the prosecution was not misstating the evidence.

Reasonable jurists would not find this conclusion to be debatable or wrong, and this court will not issue a certificate of appealability on ground 7.

Ground 8 is a hybrid containing two separate legal claims. First, petitioner argues that the evidence was insufficient to support the conviction for open and gross lewdness and the convictions for lewdness with a child under the age of 14 years. Second, petitioner argues that trial counsel provided ineffective assistance because trial counsel never raised the issue at trial.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.

On direct appeal, petitioner argued both that the prosecution had failed to prove that all of the incidents occurred and that the prosecution had failed to prove the requisite intent. Ex. 41, at 7-8 (#13). The Nevada Supreme Court's decision did not address the question of proof of intent. Ex. 48, at 11-13 (#13). This court presumes that the Nevada Supreme Court adjudicated the question of intent on the merits. Johnson v. Williams, 133 S. Ct. 1088 (2013). In the petition (#4) before this court, petitioner focuses solely on the proof of intent.[1]

The jury received the following instructions:

> Open and Gross Lewdness is defined as any indecent, obscene or vulgar act of a sexual nature that:
>
> 1. is intentionally committed in a public place, even if the act is not observed; or
>
> 2. is committed in a private place, but in an open manner, as opposed to a secret manner, and <u>with the intent to be offensive to the observer</u>.

Ex. 23, Instruction 7 (#13) (emphasis added).

> Any person who willfully commits any lewd or lascivious act, other than acts constituting the crime of Sexual Assault, upon or with any part of the body of a child under the age of 14 years, <u>with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of that child</u>, is guilty of Lewdness With a Minor.
>
> The law does not require that the lust, passions, or sexual desires of either of such persons actually be aroused, appealed to, or gratified.
>
> Consent of the minor is not a defense to this charge.

Ex. 23, Instruction 4 (#13) (emphasis added).

> To constitute the crime charged, there must exist a union or joint operation of an act forbidden by law and an intent to do the act.
>
> <u>The intent with which an act is done is shown by the facts and circumstances surrounding the case</u>.
>
> Do not confuse intent with motive. Motive is what prompts a person to act. Intent refers only to the state of mind with which the act is done.
>
> Motive is not an element of the crime charged and the State is not required to prove motive on the part of the Defendant in order to convict. However, you may consider evidence of motive or lack of motive as a circumstance in the case.

---

[1] To the extent that petitioner argues in his reply (#44) that evidence was insufficient to prove that all events occurred, a reply brief is not the correct method of raising a new ground for relief, and the court will not consider it. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).

-6-

Ex. 23, Instruction 10 (#13) (emphasis added).  The evidence at trial showed that petitioner exposed his penis to C.M. once, which he claimed was an accident, touched or tickled C.M.'s chest, stomach, and privates once, and fondled her genitals three times.  The jury was not obligated to believe petitioner's statement that the exposure was accidental.  Nor was the jury obligated to believe that there was no lewd intent simply because there was no testimony about intent.  In this case, there were four incidents of touching and one incident of exposure.  The Nevada Supreme Court reasonably could have concluded that the jury inferred the required intent from those circumstances and decided that this was no accident.  This part of ground 8 is without merit.

As for the second part of ground 8, a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution.  466 U.S. at 688.  The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."  Strickland, 466 U.S. at 689.  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

Petitioner raised this claim in his state habeas corpus petition. In the appeal from the denial of that petition, the Nevada Supreme Court held:

> First, appellant claimed counsel was ineffective for not raising at trial that the State failed to prove beyond a reasonable doubt that appellant had the necessary intent to commit the crime of lewdness with a child under the age of 14. Appellant failed to demonstrate deficiency or prejudice. The defense theory at trial was that the State did not prove every element beyond a reasonable doubt. Further, because this court held on direct appeal that sufficient evidence supported each count of lewdness, . . . appellant failed to demonstrate a reasonable probability of a different outcome had counsel focused his argument on intent. We therefore conclude that the district court did not err in denying this claim.

Ex. 71, at 1-2 (#14). As the court has noted just above, the jury could infer intent from the case's circumstances, most notably the repeated touching of C.M. On the other hand, C.M. had given inconsistent statements and Brada's testimony was rambling and incoherent. If the jury did not believe them, then the jury might find petitioner not guilty on one or more charges. The Nevada

1  Supreme Court reasonably could have concluded that counsel made a strategic decision not to focus
2  solely upon the element of intent and instead to present a more broad argument that the prosecution
3  had not proven all of the elements.  This part of ground 8 is without merit.
4       Reasonable jurists would not find this conclusion to be debatable or wrong, and this court
5  will not issue a certificate of appealability on ground 8.
6       Ground 9 contains three claims that particular jury instructions were unconstitutional
7  because they lowered the prosecution's burden of proof.  First, petitioner challenges instruction 5,
8  which states:

> Where a child has been the victim of lewdness with a minor, and does not remember the exact date of the act, the State is not required to prove a specific date, but may prove a time frame within which the act took place.

Ex. 23 (#13).  On direct appeal, the Nevada Supreme Court held:

> Cacho also assigns error to jury instruction number 5, arguing that it lowered the burden of proof because it stated that the State was not required to prove a specific date as to the sexual offense.  In Nevada, when time is not an essential element of the offense, the State is not required to allege or prove the specific date of the offense.  See Cunningham v. State, 100 Nev. 396, 400, 683 P.2d 500, 502 (1984).  Accordingly, jury instruction number 5 was a correct statement of the law.

Ex. 48, at 17 n.4 (#13).  The Nevada Supreme Court is correct:  Time is not an element of lewdness with a minor under the age of 14.  Therefore, the instruction could not have lowered the burden of proof of any element.  The Nevada Supreme Court reasonably applied Winship.

Second, petitioner challenges instruction 6, which states:

> There is no requirement that the testimony of a victim of lewdness with a child be corroborated, and her testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty.

Ex. 23 (#13).  On direct appeal, the Nevada Supreme Court held:

> Cacho assigns error to jury instruction number 6, alleging it lowered the burden of proof.  He takes issue with the fact that the instruction included the no-corroboration rule of law.  Cacho concedes that Nevada law recognizes the rule in sexual assault cases but argues that lewdness is not a sexual assault.
>
> The court has upheld jury instruction which attach the no-corroboration rule to "sexual offenses," including those offenses of sexual assault and lewdness.  Gaxiola v. State, 121 Nev. 638, 647-48, 119 P.3d 1225, 1231-32 (2005).  Cacho offers no legal authority, Nevada or otherwise, supporting his argument that committing lewdness with a minor under the age of 14 is somehow not a sexual offense.  Accordingly, jury instruction number 6 was a correct statement of the law.

Ex. 48, at 17 (#13).  The challenge to instruction 6 contains two parts.  First, petitioner argues that it the no-corroboration instruction is applicable only to charges of sexual assault, not lewdness.  The Nevada Supreme Court's ruling that the instruction applies to sexual offenses, not just sexual assault, is the final word on the matter of state law.  Second, petitioner argues that the instruction lowers the prosecution's of proof.  The court of appeals has held that use of a substantially similar jury instruction is not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Bruce v. Terhune, 376 F.3d 950, 954-56 (9th Cir. 2004).  Consequently, the Nevada Supreme Court reasonably applied Winship.

Third, petitioner challenges instruction 11, which defines reasonable doubt.  The court of appeals has determined that this instruction is constitutional.  Ramirez v. Hatcher, 136 F.3d 1209, 1211-15 (9th Cir. 1998).  That court has also held that the issue is not worthy of a certificate of appealability.  Nevius v. McDaniel, 218 F.3d 940, 944-45 (9th Cir. 2000).  This last part of ground 9 is without merit.

Reasonable jurists would not find this conclusion to be debatable or wrong, and this court will not issue a certificate of appealability on ground 9.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus is **DENIED**.  The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

Dated:    March 24, 2015.

_____
ROBERT C. JONES
United States District Judge